# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> RICHARD ALLEN GRANBOIS, <br><br> Defendant, | CR-18-32-GF-BMM <br><br><br> **AMENDED ORDER** |

Defendant Richard Allen Granbois ("Granbois") moves the Court, pursuant to Rules 12(b)(3)(C) and 41(h), to suppress evidence obtained from a search of his car, based on the fact that the officer obtained the evidence in violation of his Fourth Amendment rights. (Doc. 22). The Court conducted a hearing on this matter on November 11, 2018. (Doc. 32).

## FACTS AND BACKGROUND

Highway Patrol Trooper Derek Werner ("Trooper Werner") traveled east on Highway 2 to assist Fort Peck Tribe's Law and Justice Officers Jay Brugh and Michael Booth with a traffic stop in Poplar, Montana. (Ex. B USAO 00008, at 2). Trooper Werner followed Granbois's car as he entered Poplar's city limits. *Id.* Granbois entered the center lane, signaled his intent to turn, stopped and waited for

1

multiple cars to pass, then safely made a left turn off Highway 2 and onto 5th Avenue Southwest. (Doc. 22, at 2).

A painted median marked with double-yellow lines on either side, with large diagonal-yellow lines inside the double-yellow lane lines, covers the center lane. (Ex. A). Trooper Werner initiated a traffic stop of Granbois's car based on his understanding that Granbois could not stop his car in the center lane and initiate the left turn from the center lane. (Doc. 31 at 2). The traffic stop led to a seizure and search of Granbois's car. (Ex. C, at 6:17:52). The search yielded multiple firearms, methamphetamine, hashish, marijuana, and other paraphernalia. (Doc. 22-2, Ex. B. at 6; USAO 00012).

## LEGAL STANDARD

"The ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). A fact-specific reasonableness inquiry applies to Fourth Amendment questions. *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996). The Court must evaluate the totality of the circumstances in making a reasonable-suspicion determination. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. "A search or seizure may be permissible even though the

justification for the action includes a reasonable factual mistake." *Heien v. North Carolina*, 135 S. Ct. 530, 534 (2014). Traffic stops constitute seizures under the Fourth Amendment. *Id.* at 536. An officer initiating this type of seizure needs only "reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped [is] breaking the law." *Id.* (internal quotations omitted).

To be reasonable differs from being perfect. *Id.* The Fourth Amendment allows for some mistakes on the part of government officials in order to give them "fair leeway for enforcing the law in the community's protection." *Id.* (*citing Brinegar v. United States*, 338 U.S. 160, 176 (1949)). The limit is that the mistakes must be objectively reasonable. *Id.* Even when lawful, however, a traffic stop may violate the Fourth Amendment if executed in a manner inconsistent with the protections of the Constitution. *Illinois v. Cabelles*, 543 U.S. 405, 407 (2005).

## DISCUSSION

Granbois argues that he lawfully turned from Highway 2 onto 5th Avenue Southwest. (Doc. 22 at 1). Granbois alleges that no signs or other traffic devices prohibit drivers from turning left from Highway 2 onto 5th Avenue Southwest. *Id.* at 4. Granbois claims that the lack of signs or other traffic devices, combined with traffic laws set forth in the Montana Code Annotated, allow a left turn to be made

legally at this intersection. *Id.* Granbois concludes that the unlawful nature of the traffic stop and the subsequent search of his vehicle violated his Fourth Amendment right. *Id.* at 6.

The government argues that Trooper Werner lawfully initiated the traffic stop. (Doc. 31 at 3-8). Trooper Werner testified that based on his training and experience he reasonably believed that Granbois's "movement into the closed median and subsequent left turn violated multiple Montana traffic laws including MCA §§ 61-8-333(3), 61-8-336(1), 61-8-328(3), and 61-8-328(5)." *Id.* at 2. Accordingly, the government argues that nothing about the traffic stop and the subsequent search of the vehicle violated Granbois's Fourth Amendment rights. *Id.* at 7-8.

After hearing oral argument, and after reading over each parties' brief, the legal significance of the painted median and its diagonal yellow lines remains ambiguous. Both parties have failed to offer any conclusive information on the significance of the yellow diagonal lines found at the intersection of Highway 2 and 5th Avenue Southwest.

The Supreme Court in *Heien v. North Carolina*, __ U.S. __, __, 135 S.Ct. 530, 536 (2014), determined that the Fourth Amendment allows for objective mistakes of law on the part of government officials. The officer in *Heien* initiated

a traffic stop of a suspicious vehicle due to a faulty brake light. *Id.* at 534. The officer explained to the driver that he had stopped the car for the brake light, and "that as long as [the driver's] license and registration checked out, [the driver] would receive only a warning ticket for the broken light." *Id.* The records check revealed no issues, but the officer became suspicious throughout the stop. *Id.* The officer asked for, and received, consent to search the car. *Id.* The search revealed a sandwich bag full of cocaine. *Id.*

Heien challenged the traffic stop on Fourth Amendment grounds and moved to suppress the evidence. *Id.* at 535. Heine argued that the officer relied improperly on the state law that governed brake lights. Heine correctly noted that the state law on which the officer relied to initiate the traffic stop required a vehicle "to have only one working brake light—which Heien's vehicle indisputably did." *Id.* The justification for the stop, as Heine argued, "was therefore 'objectively unreasonable,' and the stop violated the Fourth Amendment." *Id.* The Supreme Court disagreed.

The Supreme Court held that "a mistake of the law can nonetheless give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment." *Id.* at 534. A court must ask whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. *Id.* at 539. If so, no violation of the Fourth Amendment occured. *Id.*

Granbois's challenge to his traffic stop presents a similar circumstance. Granbois alleges that he lawfully entered the center lane, stopped, and initiated a left-hand turn inside the painted median. (Doc. 22 at 4-6). Granbois notes that under Montana law, "it is not illegal . . . to cross a double yellow line to turn left where the turn can be safely made and does not hinder the flow of oncoming traffic." *See* Mont. Code Ann. § 61-8-328. Granbois fails to acknowledge, however, that he did not simply cross a double yellow line. Granbois crossed a double yellow line and stopped his car inside a painted median surrounded by double yellow lines.

The government argues that this painted median exists for a specific purpose. A pedestrian crosswalk lies on the opposite side of the intersection. (Doc. 31 at 5). "If vehicles were permitted to enter the center median, those vehicles would block the view of the crosswalk to the eastbound vehicles." *Id.* For this reason, the government argues that the center lane must be closed to traffic at the intersection. This lane closure allows a vehicle making a left-hand turn onto 5th Avenue Southwest to stop traffic behind it to protect pedestrians using the crosswalk. *Id.*

Trooper Werner explained this scenario as the purpose of the painted median. Trooper Werner "observed [Granbois's] vehicle travel into a no turn lane that was clearly marked." (Doc. 22, Ex. B at 2). Trooper Werner initiated the

6

traffic stop under his objectively reasonable belief that cars should not be inside lanes surrounded by double yellow lines, with large diagonal yellow lines inside the lane. Trooper Werner failed to direct the Court to a specific provision of Montana law, however, that prohibits a vehicle from entering a lane designed like the one at issue here. Trooper Werner's failure does not prove fatal.

Similar to the officer in *Heien*, Trooper Werner initiated the traffic stop under an objectively reasonable belief that the law prohibits vehicles from entering medians designed and created for these specific purposes. "[W]hen a probable-cause determination [is] based on reasonable but mistaken assumptions, the person subjected to a search or seizure has not necessarily been the victim of a constitutional violation." *Heien*, 135 S.Ct. at 539 (citing *Herring v. United States*, 129 S.Ct. 695 (2009)). Officers confront situations in the field that require "application of a statute [that] is unclear." *Id.* These improvised assessments deserve a minor margin of error. *Id.*

"The question the Court must ask is whether it was reasonable for [Trooper Werner] to suspect that the defendant's conduct was illegal." *Heien* 135 S.Ct. at 539. This Court finds little difficulty in concluding that Trooper Werner's belief that the center lane median represents a no-turn lane proves objectively reasonable. Double-yellow lines surround the center lane with large diagonal lines inside the lane. (Doc. 22, Ex. A). The center lane becomes an actual turning lane,

accompanied by large curved arrows directing traffic to use the center lane as a turning lane, one block east of the 5th Avenue Southwest. A sign at the intersection of 5th Avenue Southwest notes center-lane turning begins after the intersection. *Id.* The asserted purpose of the no-turn lane as a blind-spot cure for pedestrian traffic proves objectively reasonable. (Doc. 31 at 5).

## **ORDER**

Accordingly, IT IS ORDERED that DEFENDANT's motion to suppress evidence obtained from a search of the car (Doc. 21) is DENIED. IT IS ALSO ORDERED that DEFENDANT's motion to dismiss (Doc. 21) is similarly DENIED.

DATED this 14th day of November, 2018.

Brian Morris
United States District Court Judge